Susan MOON, Plaintiff, Appellant, and Cross–Respondent,

v.

Gary MOON, Defendant and Respondent.

Susan MOON, Plaintiff, Respondent, and Cross–Appellant,

v.

Gary MOON, Defendant and Appellant.

Nos. 890051–CA, 890061–CA.

Court of Appeals of Utah.

March 19, 1990.

John Walsh (argued), Salt Lake City, for Susan Moon.

David S. Dolowitz (argued) and M. Joy Douglas, Salt Lake City, for Gary Moon.

Before BENCH, GARFF and LARSON[1], JJ.

## OPINION

JOHN FARR LARSON, Senior Juvenile Judge:

Susan Moon appeals from the custody award, and Gary Moon cross-appeals from the visitation award and the property division of their decree of divorce. Gary Moon also appeals from the denial of child support from Susan. We affirm.

The parties were married in 1973. Shortly thereafter, they settled in rural Wasatch County, where Gary Moon had been building a home on land given him by his parents. He had borrowed $21,000 to pay for materials and labor, a debt that was paid off in 1979. The home was fully completed and enlarged during the marriage. The evidence conflicts concerning the value of the home, and valuation based on original cost was difficult because the parties often bartered for needed materials.

Gary Moon is a self-employed sculptor. He determines the amount of work he does and the amount of income he makes, and his work output and income have fluctuated considerably. Some evidence indicated that when marital difficulties arose, Gary Moon intentionally decreased the amount of his work and thereby precipitated a financial crisis in the family. In order to meet necessary household expenses at that time, Susan Moon took clerical employment in Park City, Utah, while Gary Moon remained at home, where he had an art studio. Susan Moon is still thus employed.

The Moons have three children ages 14, 8, and 6. Both parents have close and loving relationships with their children. The trial court found that remaining with their father would present less disruption for the children than a shift to maternal custody, and remaining in their present home would enable them to continue relationships with their nearby extended family. There were some indications that Susan Moon may be inclined to leave the Wasatch County area, in order to improve her education and employment prospects. The parties' oldest son, Jeral, expressed a desire to live with his father, and the other two children wanted to remain with their brother.

Jeral has a psycho-physiological ailment known as attention deficit disorder, which makes learning difficult for him, particularly in the subjects of reading and mathematics. Both parents have worked with Jeral to ameliorate his problems. Susan Moon's efforts have focused mainly on reading, mathematics, medical treatment, and Jeral's social needs, while Gary Moon has helped Jeral to work with his hands, to have confidence, and to appreciate nature and his family.

Two mental health experts testified at trial and expressed sharply conflicting opinions regarding prospective custody of the children. Dr. Elizabeth Stewart, a clinical psychologist appointed by the court to perform a custody evaluation, noted that

1. John Farr Larson, Senior Juvenile Judge, sitting by special appointment pursuant to Utah Code Ann. § 78-3-24(10) (Supp.1989).

each parent was a fit and proper person to have custody of the children but, since a choice was necessary, she recommended that the father have custody. Dr. W. Dean Belnap, a pediatric psychiatrist who had treated Jeral for over three years, came to precisely the opposite conclusion and recommended that Susan Moon have custody.

The district court resolved the custody dilemma in this case by placing all of the children in the custody of Gary Moon, with extensive, specified visitation by Susan. No child support was awarded. Occupancy of the home was awarded to Gary, subject to certain conditions, and the equity in the home, less the value of the land gifted to Gary, was to be divided equally between the parties upon an eventual sale of the home. The rights to Gary's artistic works created during the marriage were also divided between the parties.

On appeal, Susan Moon argues mainly against the trial court's award of custody to Gary Moon. In his cross-appeal, Gary challenges the visitation, the lack of child support, and the property division. We address first the custody and visitation issues, then turn to consideration of the property division.

### Custody and Visitation

■ Statute requires that a court determining custody consider "the best interests of the child and the past conduct and demonstrated moral standards of each of the parties." Utah Code Ann. § 30–3–10 (1989). Case law has fleshed out the "best interests" criterion to include the following factors: [2]

> The need for stability in custodial relationship and environment; maintaining an existing primary custodial bond; the relative strength of parental bonds, [3]

> The relative abilities of the parents to provide care, supervision, and a suitable environment for the children and to meet the needs of the children; [4]

> Preference of a child able to evaluate the custody question; [5]

> The benefits of keeping siblings together, enabling sibling bonds to form; [6]

> The character and emotional stability of the custodian; [7] and

> The desire for custody; the apparent commitment of the proposed custodian to parenting.[8]

These factors are highly personal and individual, and do not lend themselves to the means of generalization employed in other areas of the law, such as quantification in money. As an appellate court, we are limited in our institutional ability to come to grips with these considerations, whereas the trial court is in a much better position to gain the necessary understanding to make the best decision possible under the circumstances. Therefore, our review of the trial court's assessment of these factors is limited, and "we accord broad discretion to the trial court so that it may use its first-hand proximity to the parties to resolve the delicate and highly personal problems presented in custody dis-

2. This list is not exhaustive, and in making it, we do not prescribe consideration of any enumerated set of concepts. *See Schindler v. Schindler*, 776 P.2d 84 (Utah App.1989).

3. *Davis v. Davis*, 749 P.2d 647, 648–49 (Utah 1988); *Hirsch v. Hirsch*, 725 P.2d 1320 (Utah 1986); *Pusey v. Pusey*, 728 P.2d 117, 120 (Utah 1986); *Hutchison v. Hutchison*, 649 P.2d 38, 40 (Utah 1982); *Nielsen v. Nielsen*, 620 P.2d 511, 512 (Utah 1980); *Paryzek v. Paryzek*, 776 P.2d 78 (Utah App.1989); *Myers v. Myers*, 768 P.2d 979, 983 (Utah App.1989).

4. *Wall v. Wall*, 700 P.2d 1124 (Utah 1985); *Erwin v. Erwin*, 773 P.2d 847, 849 (Utah App. 1989); *Deeben v. Deeben*, 772 P.2d 972, 975 (Utah App.1989); *Myers v. Myers*, 768 P.2d at 983.

5. *Henderson v. Henderson*, 576 P.2d 1289 (Utah 1978).

6. *Jorgensen v. Jorgensen*, 599 P.2d 510, 512–513 (Utah 1979) (Crockett, C.J., concurring specially); *Walton v. Coffman*, 110 Utah 1, 169 P.2d 97 (1946).

7. *See generally* Utah Code Ann. § 33–3–10 (1989); *Sanderson v. Tryon*, 739 P.2d 623 (Utah 1987); *Hutchison v. Hutchison*, 649 P.2d at 41; *Kallas v. Kallas*, 614 P.2d 641 (Utah 1980).

8. *State ex rel. R—— L——*, 17 Utah 2d 349, 411 P.2d 839 (1966); *Walton v. Coffman*, 110 Utah 1, 169 P.2d 97 (1946).

putes." *Erwin v. Erwin,* 773 P.2d 847, 849 (Utah App.1989) (footnote omitted); *see also Nutter v. Nutter,* 688 P.2d 454, 455 (Utah 1984).

In the instant case, the trial court carefully considered the foregoing factors and the best interests of the children. The choice was a difficult and apparently close one, but we find in it no abuse of discretion. Both parents were found to love their children and to be well qualified for custody. The primary custodian had in recent months been the father, who was at home most of the time. In balancing the competing considerations to determine the best interest of the children, the trial court found that the father offered, among other things, more stability than the mother and more flexibility to arrange his time to care for them. Custody with him accorded with Jeral's preference, and the younger children wished to remain with Jeral.

Jeral poses special considerations in determining custody because of his attention deficit disorder. Both parents had worked with Jeral to mitigate difficulties associated with his ailment. It is true that Susan was more able to assist Jeral in some academic respects, but Gary was found to be more able to teach Jeral to work with his hands, to reinforce Jeral's confidence, and to instill a love of nature. While academic success is very important, children have other needs and potential that should be taken into consideration, which the trial court appears to have done. The custody award to Gary, coupled with the liberal visitation to Susan, is perhaps an attempt to provide the children the best of both worlds and enable them to benefit from the complementary parenting talents of both Gary and Susan.

Susan argues that she is, in effect, being penalized for taking employment outside the home at variance with outmoded views of gender roles.[9] However, the trial court clearly intended no penalty and exhibited no gender bias. In a choice between two potential custodians, the effect of either custodian's employment on the best interests of the children may properly be considered.[10] From the perspective of these children's best interests, there is an advantage to custody with Gary in that he works where the children reside and has some scheduling flexibility to accommodate their needs. That advantage has nothing to do with gender stereotyping; the same advantage would be realized if Susan were a self-employed sculptor working at home.

We therefore conclude in relation to custody of the children that the trial court did not abuse its discretion in awarding custody to Gary Moon. For the reasons we have noted above, and unless it appears that the trial court has given short shrift to the statutory criteria, we accord considerable discretion to the trial court in making a custody decision because of its first-hand proximity to the people involved. The value of that proximity is especially high in this case, where a choice must be made between two fine parents based on conflicting evidence.[11] Such a choice is difficult, but we must conclude that Susan has not demonstrated that the trial court's decision rises to the level of an abuse of discretion in granting custody to Gary but awarding her extensive visitation.

The visitation order is generous, and was apparently intended to enable the children to spend roughly equal time with each parent. For the reasons noted above in relation to custody, and given the parenting abilities of both parents, the visitation schedule was not an abuse of the court's discretion.[12]

9. *See generally Pusey v. Pusey,* 728 P.2d 117 (Utah 1986); *Marchant v. Marchant,* 743 P.2d 199, 204 (Utah App.1987).

10. *Pusey v. Pusey,* 728 P.2d at 120.

11. In particular, the trial court had to weigh the testimony of Dr. Stewart and Dr. Belnap, who had come to opposing conclusions. The trial court, in light of all of the circumstances, chose to accept the recommendations of Dr. Stewart, which is the prerogative of the finder of fact. *State v. Lafferty,* 749 P.2d 1239, 1245–46 (Utah 1988); *Myers v. Myers,* 768 P.2d 979, 984 (Utah 1988).

12. It was apparent that the parents were not on very good terms with each other and that the frequency of visitation may engender competition between the parents for the love and affec-

## Child Support

■ Parents have a fundamental duty to support their children. Utah Code Ann. § 78-45-3 and -4 (1987). When this duty is not shared by the parents in a common household, a judicial decree allocating this duty between the parents may be necessary, in order to assure the children of adequate support without unfairly burdening one parent. In making that allocation, the court is statutorily directed to consider:

(a) the standard of living and situation of the parties;

(b) the relative wealth and income of the parties;

(c) the ability of the obligor to earn;

(d) the ability of the obligee to earn;

(e) the need of the obligee;

(f) the age of the parties;

(g) the responsibility of the obligor for the support of others.

Utah Code Ann. 78-45-7 § (2) (1987). Appellate courts have reversed decisions on child support where a trial court has failed to follow these statutory mandates.[13] Such is not the case here, however.

It is true that the trial court in this case awarded no child support to Gary Moon, who received custody of the children. However, the court was cognizant that the children would be spending a great amount of their time in Susan Moon's care, in view of the extensive visitation awarded to her. As noted above, the trial court intended that the children divide their time roughly equally between their parents. Susan Moon therefore continues to bear in reality a burden of providing for her children that is roughly equal to that of Gary Moon. In consideration of the award of the home to Gary Moon and of the other facts bearing on the above-listed statutory factors, there is no abuse of discretion in the trial court's refusal to award child support from Susan Moon to Gary Moon.

## Property Division

■ Utah Code Ann. § 30-3-5(1) (1989) requires that the property distribution be "equitable," *see also Noble v. Noble,* 761 P.2d 1369, 1373 (Utah 1988). The general purpose of the property distribution is to enable the former spouses to pursue their separate lives as well as possible.[14] Appropriate considerations in dividing property include the amount and kind of property to be divided, the source of the property, the parties' health, the parties' standard of living and respective financial conditions, their needs and earning capacities, the duration of the marriage, and the relationship the property has with the amount of alimony awarded.[15]

■ In relation to the property division in this case, Gary Moon argues that the trial court erred in awarding to Susan Moon half the eventual proceeds of the marital home less an amount attributable to the value of the gifted land.[16] Gary maintains that the home was financed in large part by funds he separately borrowed before the marriage. However, although he may once have had a separate obligation for the home financing, he has fully discharged that obligation with marital funds; his home loan was entirely paid off during the marriage. Except for the value of the land given Gary by his parents, the trial court properly held the home to be a marital asset subject to equitable division upon divorce.

■ Gary Moon also challenges the award to Susan Moon of the molds for statues that Gary had sculpted along with the right to cast bronzes from them, by

---

tion of these children. Children should be afforded the opportunity to live happily in the world of each parent. Wise parents have the best interests of their children at heart and are careful not to undermine the children's allegiance to the other parent.

**13.** *E.g., Stevens v. Stevens,* 754 P.2d 952, 958 (Utah App.1988); *Jefferies v. Jefferies,* 752 P.2d 909, 911 (Utah App.1988).

**14.** *Burke v. Burke,* 733 P.2d 133, 135 (Utah 1987); *see Smith v. Smith,* 751 P.2d 1149, 1151 (Utah App.1988).

**15.** *Naranjo v. Naranjo,* 751 P.2d 1144, 1147-48 (Utah App.1988).

**16.** Gary also questions the apportionment of value between the raw land gifted to him as his separate property and the improvements to the land. We do not find the trial court's valuation to be clearly erroneous.

asserting that the right to make future castings is not property that can be divided between divorcing spouses under section 30–3–5, since its economic benefits will be realized in the future. However, an asset distributable under section 30–3–5 need not be readily and immediately convertible into money. It is enough that the right to reproduce a creative work is a right capable of being validly assigned in the present.[17] A right that is thus fully identifiable and transferable can be divided as marital property, even though its full economic benefits may be realized, if at all, only in the future.[18] Gary Moon's rights in his sculptures are therefore property subject to equitable division in divorce pursuant to section 30–3–5.

In conclusion, the trial court in this case acted within its discretion in awarding custody of the children to Gary Moon with liberal visitation to Susan Moon and without child support. The court also acted within its discretion in dividing the parties' property. This court therefore affirms the parties' divorce decree in all respects, the parties to bear their own costs and attorney fees on appeal.

BENCH and GARFF, JJ., concur.

---

**17.** *E.g., Walt Disney Prods. v. Basmajian,* 600 F.Supp. 439 (D.N.Y., 1984); *Nika Corp. v. City of Kansas City, Mo.,* 582 F.Supp. 343 (D.Mo.1983).

**18.** *See, e.g., Gardner v. Gardner,* 748 P.2d 1076 (Utah 1988) (business good will); *Sorensen v.* *Sorensen,* 769 P.2d 820, 823–24 (Utah App. 1989)), (good will and receivables); *Woodward v. Woodward,* 656 P.2d 431 (Utah 1982) (retirement funds).