Michael J. CUMMINGS, Plaintiff
and Appellee,

v.

Vonda Clegg CUMMINGS, Defendant
and Appellant.

No. 900480–CA.

Court of Appeals of Utah.

Nov. 27, 1991.

Rehearing Denied Dec. 13, 1991.

Michael K. Black, Orem, for defendant and appellant.

Helen E. Christian and Kim M. Luhn, Salt Lake City, for plaintiff and appellee.

Before BILLINGS, GREENWOOD and JACKSON, JJ.

GREENWOOD, Judge:

Vonda Cummings Scott appeals from the trial court's order adjusting financial obligations of the parties and modifying child custody. We reverse in part and affirm in part.

## BACKGROUND

Vonda Cummings Scott (Ms. Scott) and Michael Cummings (Mr. Cummings) were married on September 10, 1977. They were then fifteen and nineteen-years-old, respectively. A son, Jay, was born eighteen months later. Ms. Scott and Mr. Cummings subsequently separated and obtained a divorce in November 1980. They stipulated that Ms. Scott would have custody of Jay and Mr. Cummings would have visitation rights. After periods of temporary reconciliation during which they lived together but were not remarried, another son, Nick, was born on May 25, 1985. Ms. Scott and Mr. Cummings permanently separated in 1986.

In 1987, Ms. Scott petitioned to modify their divorce decree to take into account issues of custody and child support. Mr. Cummings and Ms. Scott again stipulated that Ms. Scott would have custody of both children, subject to reasonable visitation rights for Mr. Cummings. Both parties have since remarried. Ms. Scott married Ed Scott (Mr. Scott) and Mr. Cummings married Kelli Rupp (Ms. Cummings).

In 1989, Ms. Scott filed an order to show cause seeking delinquent child support and insurance and medical expenses. Mr. Cummings petitioned for modification of the divorce decree, seeking permanent custody of the children. At trial, he presented evidence from Dr. Elizabeth Stewart, the court-appointed clinical psychologist. Dr. Stewart was appointed to evaluate the boys' relationships with each parent and to make recommendations as to who should have custody. She testified that in her opinion, Mr. Cummings should have custody of the children. Dr. Stewart's written evaluation of each of the persons involved was also admitted into evidence and incorporated into the court's findings.

During the course of the trial, the judge spoke with Jay, then eleven-years-old, in his chambers without counsel present. The judge stated that Jay told him that he preferred to live with his father, but wished to "spend as much time as possible with his mother" and would like to have "visitation with [Mr.] Scott also."

After the three-day trial, the court found that a substantial change in circumstances had occurred and that the best interests of the boys would be served with Mr. Cummings as their custodial parent. The court granted Mr. Cummings custody of both children. The court also entered orders regarding Mr. Cummings's accrued child support obligation and Ms. Scott's prospective child support obligation. Ms. Scott now appeals.

## ISSUES PRESENTED

Ms. Scott argues on appeal that: (1) the trial court erred in not bifurcating the proceedings; (2) the evidence and the trial court's findings of fact are insufficient to support a change in custody; (3) the trial court erred in imputing income to her for child support purposes; and (4) the trial court erred in reducing Mr. Cummings's child support arrearages.

## DISCUSSION

### Bifurcation

■ Ms. Scott argues the trial court erred in not following the two-step bifurcated process required under *Hogge v. Hogge*, 649 P.2d 51 (Utah 1982), and *Becker v. Becker*, 694 P.2d 608 (Utah 1984), in considering Mr. Cummings's petition for a change in custody. She asserts that the trial court should have held separate hearings to first determine whether there had been a change of circumstances sufficient to reopen the custody issue, and if so, then in a subsequent or continued hearing, determine what would be in the best interests of the children. Instead, the trial court received evidence on both issues in one proceeding.

■ While trial courts have broad discretion in divorce and custody matters, that

discretion must be exercised within legal parameters set by appellate courts. *Jones v. Jones,* 700 P.2d 1072, 1074 (Utah 1985); *Maughan v. Maughan,* 770 P.2d 156, 159 (Utah App.1989). The question of whether current Utah appellate case law requires bifurcation in this case is one of law. Therefore, we review the trial court's action for correctness. *Scharf v. BMG Corp.,* 700 P.2d 1068, 1070 (Utah 1985).

In *Hogge,* 649 P.2d at 53–54, the Utah Supreme Court held that in change of custody proceedings, the trial court must engage in a two-step bifurcated process. First, the court must determine whether there is sufficient evidence of a substantial and material change in circumstances forming the basis for the previous award to justify reexamination of the custody question. Second, and only if that finding is affirmative, the trial court may examine what placement is in the best interests of the child. *Id.; Kramer v. Kramer,* 738 P.2d 624, 625 (Utah 1987); *Becker,* 694 P.2d at 610; *Fullmer v. Fullmer,* 761 P.2d 942, 946 (Utah App.1988). The purposes of the bifurcated proceedings are to "protect the custodial parent from harassment by repeated litigation and protect the child from 'ping-pong' custody awards." *Hogge,* 649 P.2d at 53–54.

In *Hogge,* the court stressed the separateness of each step. In determining whether a change in circumstances has occurred, the court stated that only evidence relating to the "nature and materiality of any changes in those circumstances upon which the earlier award of custody was based" should be received. *Hogge,* 649 P.2d at 54. Evidence regarding the child's best interests would be heard only if a requisite change in circumstances was first found. *Id.*

Both the supreme court and this court have subsequently relaxed the distinction in cases where the issue of custody was not originally litigated. *Elmer v. Elmer,* 776 P.2d 599, 602–06 (Utah 1989); *Maughan,* 770 P.2d at 160. In *Elmer,* the supreme court noted that some flexibility is needed in order to promote the overriding value of the best interests of the child. *Elmer,* 776

P.2d at 604. The court therefore held that in change of custody cases involving nonlitigated decrees, the trial court can receive evidence of the child's best interests in applying the change in circumstances test. *Id.* at 604–05. Both appellate courts reasoned that moderation of the evidentiary process is justified because the trial court has not previously had an opportunity to make a thorough examination of the child's best interests. *Id.* at 603; *Maughan,* 770 P.2d at 160.

The question of whether bifurcation is still required in change of custody cases where custody was not originally litigated is not directly addressed in *Elmer* nor discussed in *Maughan. Elmer*'s focus is the scope of evidence allowed on the change of circumstances issue in such cases. It allows evidence of the best interests of a child to be introduced for determining changes in circumstances as well as for determining the best interests, if reached. Justice Durham, however, in a concurring and dissenting opinion, seems to assume that the majority decision in *Elmer* abolishes the bifurcation requirement in such cases, where she states: "I dissent, however, from the holding that trial courts should not determine changed circumstances before applying the best interests test in all custody cases." *Elmer,* 776 P.2d at 606.

It certainly is eminently practical to allow non-bifurcation where the same evidence will be relevant to both issues. Our preference in cases where custody was previously nonlitigated is to leave to the trial court's discretion the decision of whether or not to bifurcate the proceedings. That position appears to be consistent with *Elmer, Maughan,* and *Hardy v. Hardy,* 776 P.2d 917 (Utah App.1989). We therefore find no error in the court's failure to bifurcate in this case.

■ We note, however, that where the trial court does not bifurcate, it still must conduct a separate analysis and make separate findings as to substantial change in circumstances. Only if a substantial change of circumstances is found should the trial court consider whether a change

of custody is appropriate given the child's best interests. As stated in *Walton v. Walton*, 814 P.2d 619, 621–22 (Utah App. 1991),

> [i]n *Elmer*, the Utah Supreme Court did not replace the *Hogge–Becker* test with a new test requiring the trial court to look solely at the best interests of the child. Rather, *Elmer* merely incorporated evidence concerning the best interests of the child into the changed circumstances test in nonlitigated custody cases.

See also *Crouse v. Crouse*, 817 P.2d 836, 838–39 (Utah App.1991).

### Sufficiency of Evidence

Ms. Scott argues that neither the evidence presented nor the trial court's findings of fact support a change of custody. She argues specifically that: (1) a substantial and material change in circumstances was not established; and (2) the court did not adequately consider the factors necessary when determining the children's best interests.

■ A challenge to the sufficiency of the evidence concerns the trial court's findings of fact. Those findings will not be disturbed unless they are clearly erroneous. *Crouse*, 817 P.2d at 838; *Walton*, 814 P.2d at 621; *Hagan v. Hagan*, 810 P.2d 478, 481 (Utah App.1991) (citing *Jense v. Jense*, 784 P.2d 1249, 1251 (Utah App. 1989)); Utah R.Civ.P. 52(a). The trial court's factual determinations are clearly erroneous only if they are in conflict with the clear weight of the evidence, or if this court has a "definite and firm conviction that a mistake has been made." *State v. Bobo*, 803 P.2d 1268, 1271–72 (Utah App. 1990) (citations omitted). While we accord considerable deference to factual findings, we examine the conclusions of law arising from those findings under a correction-of-error standard, according no particular deference to the trial court. *Bobo*, 803 P.2d at 1272 (citations omitted).

### A. Change in Circumstances

■ Ms. Scott argues that the trial court's findings were not sufficient to establish a substantial change in circum-

stances. She also claims that the trial court erroneously failed to make findings regarding the conditions existing when the parties stipulated to the custody arrangement.

"[A] custody decree should not be modified unless changed circumstances are demonstrated." *Hogge*, 649 P.2d at 53 (citations omitted). The change in circumstances determination is designed to maintain a "reasonable degree of stability" in a child's "relationships to important people" and to his or her "environment." *Elmer*, 776 P.2d at 602; *Kramer*, 738 P.2d at 628 (Stewart, J., concurring). It also serves to prevent "undue burdening of the courts and the harassing of parties by repetitive actions." *Id.*

The trial court in the present case, found that a material change of circumstances had occurred since the entry of the divorce decree and subsequent order. In its findings, the court acknowledged that the parties stipulated to the custody arrangement in both the decree and the order. The court based its determination of a change of circumstances upon the following findings: that Ms. Scott had had separate relationships with three different men over the prior three years; that Mr. Scott imposed rules and discipline upon the boys which caused them emotional harm; that Ms. Scott interfered with Mr. Cummings's visitation rights; and that custody had never been litigated but had been resolved originally through stipulation. The court also found that Ms. Scott had held three different jobs during the past three years, and had been in her current position for less than one year.

■ "The asserted change [in circumstances] must ... have some material relationship to and substantial effect on parenting ability or the functioning of the presently existing custodial relationship. In the absence of an indication that the change has or will have such effect, the materiality requirement is not met." *Becker*, 694 P.2d at 610. Also, "only changes not contemplated by the parties at the time of divorce are relevant to the substantial

change test." *Crouse,* 817 P.2d at 839; *Fullmer,* 761 P.2d at 947.

The trial court relies on the fact that Ms. Scott has held three jobs over the past three years and has been in her current position for less than one year. There is no evidence, however, that her income or ability to financially support the children is unstable. The court named this as a major consideration, but did not state how it adversely affects the children or is relevant to Ms. Scott's parenting ability.

The trial court's finding that Ms. Scott interfered with Mr. Cummings's visitation rights is based on the parties' failure to cooperate and communicate about specific visitation arrangements. Both Mr. Cummings and Ms. Scott had attorneys involved in their visitation disputes. One time, Mr. Cummings asked Ms. Scott's attorney if he could keep the children for three extra days to go to Lake Powell. Ms. Scott's attorney stated that he did not think that would be a problem, but neither he nor Ms. Scott ever confirmed the agreement. Mr. Cummings kept the boys the extra days and Ms. Scott called the police. The testimony presents instances of bickering about the exact time the children should be picked up and returned. There is evidence that both parties became upset over time differences of even one hour. Again, there is no explanation of how these disputes over visitation impact the parenting ability of Ms. Scott. All indications are that this was only a recent problem, associated with the current custody dispute.

The trial court, relying on Dr. Stewart's testimony, found that the boys had suffered emotional harm due to the rules and discipline that Mr. Scott imposed on them. Mr. Scott set up a series of rules for the household when he married Ms. Scott. The rules for the children include: they cannot eat anything without asking permission first; they must ask permission to go anywhere or have friends over; they cannot stand in front of the open refrigerator and drink directly out of the cartons; and they cannot watch television in the living room all night. These rules were not in place before Mr. and Ms. Scott were married.

The court cites to the existence and enforcement of these rules as a major factor in its determination that a change in circumstances had occurred. There is no evidence of physical, mental, or psychological abuse. In fact, the record establishes that the only method of disciplining the children that Mr. Scott used was sending the children to their rooms and/or revoking their privileges. Although Jay told the trial judge that he did not like the rules, there is no evidence that Nick suffered emotional harm because of them or felt the way his older brother did.

The court did not make factual findings regarding the circumstances at either of the two times that the parties stipulated to the custody arrangement. There is undisputed evidence, however, that the circumstances now are much the same as at the time of the second stipulation. There is no evidence or findings to suggest that Ms. Scott is substantially less able now to care for the boys and provide them a stable and loving home than she was when Mr. Cummings agreed that Ms. Scott should have custody. At most, she indicated she agrees with the rules Mr. Scott has initiated.

While *Elmer* allows a broader range of evidence on the change of circumstances test, it still must be satisfied. We believe it is appropriate in previously stipulated cases, where there is an "absence of exceptional criteria such as an initial custody award premised on a temporary condition, a choice between marginal custody arrangements, or a default decree," that the requirement be strictly followed. *Crouse,* 817 P.2d at 839 (citing *Maughan,* 770 P.2d at 160). Most divorce decrees are obtained through stipulation and it usually is in the best interests of the parties as well as the judicial system to encourage settlement of issues by the parties themselves. Therefore, unless the party seeking a change of custody establishes that there were unusual circumstances at the time of the prior stipulation, a material and substantial change of circumstances as described in Utah case law must be established. In those cases where the moving party does not plead and prove that excep-

tional circumstances existed at the time of the earlier stipulation, we also believe the trial court can, in its discretion, disallow evidence of best interests.[1] Otherwise, we will experience the evils of ping-pong awards and recurring litigation predicted in *Hogge* and *Becker*, or, alternatively, stipulated custody orders will disappear.

In this case, most of the factors contributing to the change in circumstances cited in the court's findings were foreseeable at both the time of the decree and the subsequent order. Both parties were very young when they first married and were still young when they separated. Predictably, both had a series of relationships before marrying their current spouses. Similarly, frequent changing of jobs for a woman in her early twenties is hardly unusual. There is nothing to indicate that each of Ms. Scott's jobs was not progressively better than the last. The only change of circumstances which is material to the children's custodial arrangement is Ms. Scott's marriage to a man who is more strict than Mr. Cummings or Ms. Scott when parenting alone. Under *Elmer*, the court could consider the effect of this change on the children. There was no evidence to support a finding that Nick was harmed. Regarding Jay, it is predictable that a boy of his age would not readily and happily adjust to stricter rules. It is certainly not unexpected that a mother would remarry and that her new spouse might have different disciplinary standards.

We find that even under the *Elmer* evidentiary standard, the changes are not sufficient to constitute a substantial or material change of circumstances. We discuss the court's findings as to the children's best interests also, because of the interrelationship of the two under *Elmer*.

### B. Best Interests

Ms. Scott argues that the trial court did not consider all of the necessary factors in determining what placement would serve the boys' best interests. She specifically contends that the trial court did not give any weight to the prior custodial relationship.

The trial court relied upon the following findings of fact in determining that it was in the boys' best interests to change custody to their father: the emotional harm the boys' suffered because of Ms. Scott's prior relationships with men; Mr. Scott's rules and control over the boys; problems with visitation; that Jay prefers living with Mr. Cummings; that Jay prefers he and Nick not be separated; that Mr. Cummings is a fit and proper person to assume parenting duties; that the boys get along with Ms. Cummings; that Dr. Stewart does not think Mr. and Ms. Scott's marriage will last; that Dr. Stewart felt that Mr. and Ms. Cummings's relationship will last; that Mr. Scott holds several jobs; that the boys have a strong bond with Mr. Cummings; that Ms. Scott requires the boys to perform certain chores around the house and spend considerable time with the family on the farm; and that the activities in Mr. Cummings's home are more recreational in nature.

The overriding consideration in child custody determinations is the child's best interests. *Paryzek v. Paryzek*, 776 P.2d 78, 81 (Utah App.1989) (citing *Hutchison v. Hutchison*, 649 P.2d 38, 40 (Utah 1982)); Utah Code Ann. § 30–3–10 (1989). In *Moon v. Moon*, 790 P.2d 52, 54 (Utah App.1990), this court enumerated specific factors that should be included in determining the best interests of a child in a custody dispute. The factors include:

The need for stability in custodial relationship and environment; maintaining an existing primary custodial bond; the relative strength of parental bonds;

The relative abilities of the parents to provide care, supervision, and a suitable environment for the children and to meet the needs of the children;

Preference of a child able to evaluate the custody question;

---

**1.** This is consistent with both *Elmer* and *Maughan*, which established an exception to the prior rule forbidding evidence of best interests on the change of circumstances issue. While they allow such evidence, they do not require its admission.

The benefits of keeping siblings together, enabling sibling bonds to form;

The character and emotional stability of the custodian; and

The desire for custody; the apparent commitment of the proposed custodian to parenting.

*Id.* (citations omitted).

As included in the *Moon* criteria, courts must consider prior custodial arrangements. "[T]rial courts must examine a child's need for stability, and therefore, consider prior custody arrangements, including the duration of those arrangements, and the potential harm to the child if the arrangement is changed." *Paryzek,* 776 P.2d at 82.

[T]he trial court should give stability and continuity the weight that is appropriate in light of the duration of the existing custodial relationship and the general welfare of the child. The findings of fact should reflect that the court considered stability as a factor in the custody decision and the weight the court accorded it.

*Elmer,* 776 P.2d at 605. "[A] lengthy custody arrangement in which a child has thrived ought rarely, if at all, to be disturbed, and then only if the circumstances are compelling." *Id.* at 604.

■ The trial court's findings of fact do not even acknowledge that the boys have lived their entire lives, with the exception of a few months, with Ms. Scott, and thus necessarily do not describe the weight accorded that fact. The court's failure to do so constitutes error under Utah case law.

■ We also take exception with the trial court's heavy reliance on its conversation with Jay and his statement that he prefers to live with his father. It was inappropriate for the court to give an eleven-year-old boy such control. Utah Code Ann. § 30–3–10(1) (1989)[2] states that a child's preference as to whom he or she wishes to live with may be considered, but is not controlling. A child's preference is only one of several factors to be considered and is not binding on the trial court. *Paryzek,* 776 P.2d at 81; *Bake v. Bake,* 772 P.2d 461, 464 (Utah App.1989). Particular care is needed where a child is fairly young and he or she may affect a younger sibling, as in this case.

It is also significant that Mr. and Ms. Scott were just recently married at the time Mr. Cummings filed his petition and at the time of trial. They had had no opportunity to make the adjustments necessary in every newly-formed family. "Adjusting to a new family arrangement, such as a remarriage, is difficult for everyone involved. Often the biggest burden falls on the children, however, who are without the life experiences that make adapting to new situations easier." Stanley S. Clawar, *Helping Stepchildren Adjust,* 8 Fam.Advoc. 39 (Summer 1985). Children need time to adapt and feel comfortable with stepparents. Pressuring children to immediately accept stepparents usually increases the child's resistance. *Id.* "Some children take longer to adapt to the new situation. The older the child and the longer the relationship with the original family member, the harder it is to make the switch." *Id.*[3]

The court's conclusion that a change in custody was in the boys' best interests was error for two major reasons: (1) the prior custody arrangement was not given consideration or weight by the trial court despite its long duration and overall success; and (2) too much weight was given to Jay's stated preference.

If this were an initial custody determination, we would be much less likely to dis-

**2.** Utah Code Ann. § 30–3–10(1) (1989) provides in pertinent part:

The court may inquire of the children and take into consideration the children's desires regarding the future custody, but the expressed desires are not controlling and the court may determine the children's custody otherwise.

**3.** We also note that the relationship between Jay and Mr. Scott seemed to be improving with time, according to both Dr. Stewart and the court, after the conversation with Jay. In addition, the court's concern about Ms. Scott's prior relationships with men is unpersuasive as she was married at the time of these proceedings. Mr. Cummings too, had had a series of relationships, a fact not known to Dr. Stewart when she prepared her report.

turb the trial court's ruling because of the deference we accord the trial court to weigh the relative merits of the two homes, one with differing but not harmful parenting styles. However, where, as here, the trial court reversed a longstanding arrangement, without appropriate consideration of the years these boys had lived with their mother, we cannot affirm. We reverse the custody award, rather than remanding for further proceedings, to minimize further disruptions of the children's or parties' lives.

## Imputing Income

Ms. Scott challenges the trial court's rulings regarding the parties' child support obligations. She argues that the court erred in imputing income to her without first finding that she was voluntarily unemployed or underemployed as required under Utah Code Ann. § 78–45–7.5(7)(a) (Supp. 1990). Utah Code Ann. § 78–45–7.5(7)(a) provides that income cannot be imputed to a parent unless the parent stipulates to the amount imputed or a hearing is held and a finding made that the parent is voluntarily unemployed or underemployed.

Ms. Scott also argues that the amount of income imputed to her was incorrect because it should be based on her present hourly rate rather than her past earnings.

The court accords the trial court considerable discretion in adjusting the financial interests of divorced parties and, thus the court's "actions are entitled to a presumption of validity." *Allred v. Allred,* 797 P.2d 1108, 1111 (Utah App.1990) (quoting *Hansen v. Hansen,* 736 P.2d 1055, 1056 (Utah App.1987)). The trial court's determination "will not be upset on appeal unless the evidence clearly preponderates to the contrary or [this court] determine[s] that the court has abused its discretion." *Durfee v. Durfee,* 796 P.2d 713, 717 (Utah App.1990) (quoting *Ostler v. Ostler,* 789 P.2d 713, 715 (Utah App.1990)).

The trial court received evidence concerning Ms. Scott's sources of income. It did not hold a separate hearing on the matter, nor did it make a finding that Ms. Scott was voluntarily unemployed or underemployed.

Ms. Scott testified at trial about her various jobs and sources of income. At that time she worked parttime in a doctor's office for $5.25 an hour. She also worked at home with Credit Security Systems, a collection agency which she and Mr. Scott owned. She also spent time working on the farm that she and Mr. Scott owned. Her testimony conflicted at times regarding the average number of hours she worked each week. Ms. Scott testified that she used to work for Rocky Mountain Helicopters for $6.70 an hour, but that she had not worked there for the past year and a half. Ms. Scott submitted paycheck stubs, computer printouts, and a posttrial affidavit verifying her income. In her affidavit, Ms. Scott stated that she had received no income from her work on the farm because it had not yet made a profit.

Based upon this evidence, the trial court imputed Ms. Scott's income as her historical earnings of $6.70 an hour on a fulltime basis. Utah Code Ann. § 78–45–7.5(7)(b) (Supp.1990) provides that imputed income is to be based upon "employment potential and probable earnings as derived from work history, occupation qualifications, and prevailing earnings for persons of similar backgrounds in the community." The income information provided to the court by Ms. Scott was confusing and contradictory. Given her failure to provide intelligible information and in light of our custody ruling, we find no error in the court's determination of Ms. Scott's income.

## Child Support Arrearages

Ms. Scott argues that the trial court erred in reducing Mr. Cummings's child support arrearages for the times when the children were visiting or living with him. We agree because retroactive relief from child support obligations is generally not allowed. *Carlsen v. State Dept. of Social Serv.,* 722 P.2d 775, 777 (Utah 1986) (per curiam); *Karren v. State Dept. of Social Serv.,* 716 P.2d 810, 813 (Utah 1986); *Larsen v. Larsen,* 561 P.2d 1077 (Utah 1977). "Child support payments become unalterable debts as they accrue; therefore, a periodic installment cannot be

changed or modified after the installments have become due." *Larsen*, 561 P.2d at 1079. "[O]nly prospective modification of a support obligation is proper." *Karren*, 716 P.2d at 813 (citing *Bernard v. Attebury*, 629 P.2d 892 (Utah 1981)).

■ Ms. Scott also contends that the trial court erred in reducing Mr. Cummings's child support arrearages by the amount he paid for medical expenses and insurance premiums for the children. We affirm this deduction and remand to the trial court for a proper accounting of the arrearages for which Mr. Cummings is liable.

## CONCLUSION

For the foregoing reasons, we reverse the trial court's order changing custody.

We also reverse the reduction of Mr. Scott's child support arrearages for the times the children were staying with him. We affirm the child support calculation and the deduction for medical expenses and insurance premiums and remand to the trial court for a proper accounting and other determinations consistent with this opinion.

BILLINGS and JACKSON, JJ., concur.