Annette Ellertsen BELDEN, Plaintiff,

v.

DALBO, INC. and Dale Randolph Peel,
Defendants and Third–Party Plaintiffs
and Respondents,

v.

Martin R. LINGWALL, Third–Party
Defendant and Appellant.

No. 860043–CA.

Court of Appeals of Utah.

April 14, 1988.

Gregory B. Wall (argued), Salt Lake
City, for third-party defendant and appellant.

Henry E. Heath (argued), Strong & Hanni, Salt Lake City, for defendants and third-party plaintiffs and respondents.

Before GREENWOOD, BENCH and BILLINGS, JJ.

## OPINION

GREENWOOD, Judge:

Appellant Martin R. Lingwall (Lingwall) appeals from a jury verdict, claiming that the trial court failed to properly instruct the jury of the consequences of its apportionment of negligence. We affirm.

On September 5, 1981, a truck and a motorcycle collided on a road near Chalk Creek Canyon, Summit County, Utah. Dalbo, Inc. (Dalbo) owned the truck and Dale R. Peel (Peel) was driving it in the course of his employment with Dalbo. Lingwall was driving the motorcycle with Annette Belden (Belden) as his passenger.

Belden commenced this action against Dalbo and Peel, and Dalbo and Peel filed a third-party complaint against Lingwall, claiming a right to contribution in the event Lingwall was found partially negligent. Lingwall counterclaimed for damages against Dalbo and Peel. Belden settled her claim against Dalbo and Peel prior to trial for $285,000.

The claims between Lingwall and Dalbo and Peel were tried to a jury commencing November 30, 1982. Prior to trial, Lingwall requested an instruction which stated that Belden had suffered $285,000 in damages and that if Lingwall were found negligent, Lingwall would have to contribute in paying Belden's damages. The court refused to give the instruction. During the trial and over the objection of Lingwall's counsel, the court allowed testimony into evidence concerning Lingwall's purported extra-marital relationship with Belden. The jury returned a special verdict finding Dalbo and Peel thirty percent negligent and Lingwall seventy percent negligent. The jury also found that Lingwall suffered $69,083 in damages. Utah's comparative negligence statute barred Lingwall's recovery of any amount from Dalbo and Peel because he was more than fifty percent negligent, and, consequently, the court nonsuited Lingwall. The court ordered Lingwall to pay seventy percent of the $285,000 settlement Belden had entered into with Dalbo and Peel on the contribution claim. On November 20, 1982, Lingwall filed a motion for a new trial. On December 30, 1982, the Utah Supreme Court issued *Dixon v. Stewart*, 658 P.2d 591 (Utah 1982). The trial court denied the motion for a new trial in June of 1984.

Attached to Lingwall's appellate brief were four juror affidavits which stated that the jury was confused as to the effect of its finding of contributory negligence.

Three issues are raised on appeal: 1) whether the trial court erred in failing to instruct the jury of the consequences of its apportionment of negligence; 2) whether the trial court's admission of Lingwall's testimony regarding a possible extra-marital relationship with Belden was prejudicial error; and 3) whether the juror affidavits attached to Lingwall's appellate brief are properly before this Court.

### I

We first address whether the trial court erred in failing to instruct the jury of the consequences of its apportionment of negligence. As stated above, after Lingwall filed his motion for a new trial in this case, but before the court had ruled, the Utah Supreme Court decided *Dixon v. Stewart*, 658 P.2d 591 (Utah 1982). In *Dixon*, the Court overruled *McGinn v. Utah Power & Light Co.*, 529 P.2d 423 (Utah 1974), and held that:

> if requested, a trial court must inform the jury of the effect of apportioning to the plaintiff 50% or more of the negligence it finds in a comparative negligence case, if the effect of such an instruction will not be to confuse or mislead the jury. The trial courts should be given some discretion to exclude such an instruction in the unusual or complex case where it would lead to confusion or improper jury deliberations.

*Dixon*, 658 P.2d at 596.

Prior to *Dixon*, the Utah Supreme Court had held that "it is prejudicial error if, in a

comparative negligence case, the court instructs the jury as to the effect or impact its fact-finding answers, in a special verdict, will have on the outcome of the case." *McGinn,* 529 P.2d at 424.

■ The instruction requested at trial in this case informed the jury that Belden had suffered $285,000 in damages and that if the jury found Lingwall negligent and that his negligence was either the cause or one of several causes of the accident, Lingwall would have to contribute to Belden's damages. Although the instruction is not precisely that allowed by *Dixon,* Lingwall's motion for a new trial specifically requested an instruction in accordance with *Dixon.* We must, therefore, determine if the *Dixon* rule should be applied retroactively.

The standard for determining whether to apply an overruling decision retroactively was discussed in *Malan v. Lewis,* 693 P.2d 661 (Utah 1984), which held that Utah's guest statute was unconstitutional. The court said:

> The general rule from time immemorial is that the ruling of a court is deemed to state the true nature of the law both retrospectively and prospectively. In civil cases, at least, constitutional law neither requires nor prohibits retroactive operation of an overruling decision, but in the vast majority of cases a decision is effective both prospectively and retrospectively, even an overruling decision. Whether the general rule should be departed from depends on whether a substantial injustice would otherwise occur.

*Id.* at 676 (citations omitted).

The Court further found that retroactive application would take place unless prior law had been justifiably relied on or a burden would be created. There is no persuasive evidence that the parties in this action relied on the prior law in their actions, nor that a substantial burden would be imposed by retroactive application of *Dixon.* Therefore, we hold that *Dixon* should have retroactive application.

■ Under *Dixon,* even if a proper request for an instruction is made, as in this case in the motion for a new trial, the trial court may exclude the instruction where it "would lead to confusion or improper jury deliberations." Dalbo and Peel argued that this case falls within the exception to the *Dixon* rule because an explanation of the consequences of the jury's apportionment of negligence would require the court to inform the jury of the settlement agreement and claim for contribution. Such additional information, they urged, could confuse the jurors and possibly prejudice Dalbo and Peel by implying that the settlement resulted from Dalbo and Peel's culpability. We defer to the trial court's assessment of the impact such an instruction would have had upon the jury and, therefore, find that the court properly applied the *Dixon* rule and that there was no error in the court's failure to grant the motion for a new trial.

## II

■ The second issue is whether the trial court's admission of Lingwall's testimony regarding a possible extra-marital relationship with Belden was prejudicial error. We will not disturb the trial court's rulings regarding the admissibility of evidence unless it clearly appears that the lower court was in error. *State v. Gray,* 717 P.2d 1313, 1316 (Utah 1986). In addition, "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected...." Utah R.Evid. 103. "In determining whether a 'substantial right of the party is affected,' we look at the evidence as a whole in the context of the trial to determine if, absent the error, there is a reasonable likelihood that a different result would have been reached." *State v. Speer,* 750 P.2d 186, 189 (Utah 1988).

During cross-examination of Lingwall, Dalbo and Peel's attorney asked Lingwall several questions which established that Belden had recently been divorced. Cross-examination also established that Lingwall invited her to Cowboy Days in Evanston, Wyoming and elk hunting the following

day. Dalbo and Peel's attorney then asked the following series of questions:

Q You weren't thinking of any of the consequences of being with Annette Belden as you were driving down the road, then?

A No, sir.

Q You weren't concerned about what your wife might think about—

MR. HENRIOD: Your Honor, I object. It's irrelevant.

MR. HEATH: Your Honor, I think it may go to his mental state, and I think it is relevant.

MR. HENRIOD: Certainly no foundation for any relevancy.

MR. HEATH: Well, perhaps I could ask a few more questions to establish foundation, then.

THE COURT: You may proceed as far as any further foundation.

Q (By Mr. Heath) You were married at that time, were you not?

A I still am.

Q My question is you were married to the woman you are married to now at that time?

A Yes, I am.

Q Did you ask your wife if you could take Annette to Cowboy Days?

A No, I didn't.

Q Did she know that Annette was with you?

A No. My wife was in Los Angeles.

Q Did you consider the fact that you would be telling her that you had Annette with you up in Evanston and then elk hunting?

A If she would have asked me, I would have told her. I didn't keep any secrets.

Q She wouldn't have objected to that?

A I can't answer that question.

Q I see.

A She may have objected, yes.

Q I think the question really is were you feeling any guilt about being out there without your wife and being with another woman?

A No, sir.

Q As you were driving down?

A No, sir.

Q That question wasn't on your mind?

A No, sir.

Q It didn't divert your attention.

A No, sir.

Utah R. Evid. 401 states that evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Utah R.Evid. 403. In *Terry v. Zions Cooperative Mercantile Institution,* 605 P.2d 314 (Utah 1979), the Utah Supreme Court defined "unfairly prejudicial" as evidence that

has a tendency to influence the outcome of the trial by improper means, or ... appeals to the jury's sympathies, or arouses its sense of horror, provokes its instinct to punish or otherwise causes a jury to base its decision on something other than the established propositions of the case.

*Id.* at 323 n. 31.

The trial court admitted the testimony into evidence over objection of Lingwall's attorney as to relevancy. Dalbo and Peel's attorney argued that Lingwall's extra-marital affair with Belden may have had some relevance to his state of mind at the time of the accident. However, the evidence conceivably could have affected the jury's opinion of Lingwall, provoked its instinct to punish and improperly entered into the jury's deliberations. In weighing the probative value of the evidence versus its prejudicial effect, we find that the danger of unfair prejudice is significantly greater than the relevance of the evidence to Lingwall's state of mind. We hold, therefore,

that the trial court abused its discretion in admitting the evidence of Lingwall's purported extra-marital affair with Belden.

Although the evidence was erroneously admitted, that error does not require reversal unless there is a reasonable likelihood that a different result would have been reached, absent the tainted evidence. *State v. Speer*, 750 P.2d at 189. In this case, the jury found Lingwall negligent but awarded him $69,083 in damages. Although Lingwall prayed for a substantially higher damage award, we have reviewed the lengthy trial transcript and conclude that the evidence concerning Lingwall's relationship with Belden did not likely affect the jury's damage award or its apportionment of negligence. Therefore, the trial court's erroneous admission of the evidence of Lingwall's relationship with Belden did not affect Lingwall's substantial rights and constituted harmless error. *See* Utah R.Civ.P. 61.

### III

Finally, we address the admissibility of juror affidavits. It is well-settled that juror affidavits are generally inadmissible to impeach the jury's verdict. *Groen v. Tri–O–Inc.*, 667 P.2d 598, 603 (Utah 1983); *Smith v. Barnett*, 17 Utah 2d 240, 408 P.2d 709 (1965). There are two exceptions to that general rule: 1) when the verdict was determined by chance or bribery, Utah R.Civ.P. 59(a)(2); *Groen*, 667 P.2d at 603; *Deats v. Commercial Security Bank*, 746 P.2d 1191 (Utah App.1987); *Hillier v. Lamborn*, 740 P.2d 300, 304 (Utah App.1987); or 2) to establish "whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." *Hillier*, 740 P.2d at 305; Utah R.Evid. 606(b).

The juror affidavits attached to Lingwall's brief are not part of the trial court's record and do not fit within the exceptions to the general rule that juror affidavits are generally inadmissible. The affidavits do not even attempt to demonstrate that the verdict was determined by chance or bribery or that extraneous prejudicial information or an outside influence was present. Therefore, we hold that the juror affidavits are not properly before this Court.

We have not considered the affidavits in our deliberations and caution counsel that improper submission of juror affidavits, as here, is viewed with extreme disfavor by this Court.

Affirmed.

BENCH and BILLINGS, JJ., concur.